C. M. CARTER, Sr., et al., Appellants,

v.

FIRST AMERICAN NATIONAL BANK OF NASHVILLE, TENNESSEE, Appellee.

Court of Appeals of Kentucky.

June 17, 1955.

Frank R. Goad, Scottsville, Marshall Funk, Bowling Green, for appellants.

N. F. Harper, Douglas Keen, Scottsville, for appellee.

## STEWART, Chief Justice.

This is an appeal from an order of the Allen Circuit Court refusing to allow C. M. Carter, Sr., and F. E. Bradley to intervene in an action which decreed the foreclosure and sale of certain property of the New Farmers Burley Warehouse, Inc., of Scottsville, herein referred to as "the corporation."

On June 18, 1954, appellee, First American National Bank of Nashville, Tennessee, sued upon a note executed and delivered to it by the corporation and foreclosed upon a mortgage on certain real estate given to secure the debt. No defense was interposed to this action, and on July 10, 1954, a default judgment was entered in favor of appellee for $58,552.08, together with interest thereon at 5% from June 15, 1954, until paid. The master commissioner was directed to sell the mortgaged property in order to satisfy the debt, interest and costs, and he immediately advertised that it would be sold on August 9, 1954. The mortgaged property consisted of a prize barn, two sale barns and certain accessory buildings situated on about three acres of land. On July 30, 1954, one of the sale barns was destroy-ed by fire. This building was insured for $50,000 with a loss-payable clause made to appellee.

On August 7, 1954, appellants filed an independent action in the Allen Circuit Court against the master commissioner and secured a restraining order preventing him from selling the property. This suit was based upon allegations similar to those contained in the tendered intervening petition. The order was issued by the circuit judge of the Forty-third Judicial District because the Honorable John B. Rodes, Judge of the Allen Circuit Court, was at the time absent from his district on vacation. Subsequently, the two circuit judges mentioned being out of the state, this restraining order was dissolved by the circuit judge of the Twenty-ninth Judicial District after a hearing upon notice but it was reinstated by this Court. In the meantime, appellants entered their motion and sought as intervenors in appellee's foreclosure suit to set aside that portion of the judgment requiring a sale of the corporation's real estate to satisfy appellee's debt.

Accompanying their motion, they offered to file their intervening petition, which stated each owned 50 shares of stock in the corporation and asserted the purpose of the intervention was "to show their interest in the within action as stockholders." The pleading alleged it would be to the best interest of all stockholders in the corporation to call off the judicial sale, for the reason that appellee's debt could be taken care of in this manner: Collection of the insurance money of $50,000 could and should be effected and applied on the judgment, but, as there would still be a deficit, appellants declared they were willing to supplement the insurance money to the extent of $10,-000, which sum they averred they tendered along with their petition. To secure their advancement, they stated they planned to accept an assignment of appellee's mortgage lien to the extent of their contribution. In the alternative, if the above amounts when combined should be insufficient to settle appellee's claim, they proposed that so much of the real estate as necessary be sold for this purpose, and that this could be done

without impairing the value of the mortgaged property as a whole. Such a plan of payment, they insisted, would release the remainder of the corporation's property for continuation in business. The intervenors asserted the judgment was erroneous in adjudicating, as it did, that the property must be sold in its entirety because it could not be divided without materially impairing its value.

A response to appellants' averments was filed which recited in substance that appellants as stockholders were without authority to intervene in the way and manner they were attempting; that the intervention, if allowed, would constitute a collateral attack upon the judgment, since it alleged it was erroneous; that appellee is entitled to collect its debt and should not be required to wait until some indefinite time when the insurance money might or might not be paid; that the sale of the real estate is imperative nevertheless, because the insurance money, if and when it is obtained, will not only be inadequate to pay off appellee's judgment but any surplus funds that might result from the sale will be required to liquidate the balance of the indebtedness of the corporation; that the corporation is insolvent and its present management has been unable in the past and cannot hope in the future to operate it successfully on account of discord among the stockholders; and that its property should be sold to pay off all its indebtedness and to wind up its affairs.

Affidavits of 21 stockholders, holding 286 shares of stock in the corporation, were filed in behalf of appellee in support of the foreclosure proceeding and in their own behalf to effect a closing out of the corporation. A summary of the material statements contained in them reveals other debts besides appellee's are owed by the corporation which aggregate $23,500, plus accrued interest, and which the corporation is unable to pay in whole or in part, because it is insolvent. Of the amount mentioned actions have been filed by creditors on notes of $10,000 and $7,500 of the corporation, respectively, and attachments have been levied on all the corporation's property to subject to the payment of these debts any balance remaining over after satisfying appellee's judgment. These same affiants recited there has been such dissension and disagreement among the stockholders under its present management that the corporation has not been able to function successfully; and they maintained the best interest of all concerned would be served by a sale of the property at public outcry not only in order that the debts of the corporation could be paid off but so that its affairs could be wound up. An affidavit of J. Y. Lones was to the effect that the mortgaged property could not be divided without materially impairing its value. None of the proof submitted by these affidavits was rebutted.

Upon submission of the independent action of appellants on their prayer therein to make permanent the temporary restraining order enjoining the master commissioner from selling the mortgaged property and also on their motion to be allowed to file their intervening petition in the foreclosure proceeding to set aside the order of sale in the judgment, the chancellor dissolved the restraining order, dismissed the independent action and declined to permit appellants to intervene in the proceeding of appellee against the corporation. The master commissioner was then directed to go ahead with the sale of the property as provided by the judgment with certain modifications.

In urging a reversal, appellants argue that a court has the right to revoke an order of sale in a foreclosure proceeding when the debt upon which the foreclosure is predicated can be paid by the debtor without a judicial sale of the debtor's property. With the logic of this contention we agree; but, in the case at bar, it is uncontradicted, even conceded, that the insurance money anticipated to be received by appellee will fall short of satisfying appellee's debt by almost $10,000. To meet this shortage, appellants come forward with a plan of settlement of their own choosing, namely, they say they will agree to advance money up to a certain limit, and, if the insurance money and the amount they offer in addition are still inadequate to liquidate the judgment, they have yet another scheme they propose.

This sort of contriving could go on indefinitely and, as a consequence, appellee could be made to suffer loss of an indeterminate amount by having delay and additional litigation forced upon it. If a mortgagee with an enforceable lien given to secure an obligation that has become past due must await the pleasure of the mortgagor before proceeding to collect an uncontested debt, or must pursue a devious, improbable, expensive course of settlement selected for him by his debtor, then indeed courts may as well declare in the face of Section 14 of the Constitution of Kentucky that a creditor shall have no remedy by due course of law and the administration of his rights may not only be stayed but may even be denied.

We believe the chancellor did not abuse his discretion when under the circumstances he refused to interfere with the foreclosure judgment and ordered the master commissioner to sell the mortgaged property. This view makes it unnecessary to consider other issues raised.

Wherefore, the judgment is affirmed.